# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **FOCUSPOINT INTERNATIONAL, INC.** )<br>c/o HL Statutory Agency, Inc. )<br>200 Public Square, Suite 2800 )<br>Cleveland, Ohio 44114 )<br>  )<br>    **Plaintiff,** )<br>  )<br>v. )<br>  )<br>**JAMES CHIACCHIA** )<br>31448 Kingsway Road )<br>Georgetown, Texas 78628 )<br>  )<br>    and )<br>  )<br>**COVAC GLOBAL HOLDINGS, INC.** )<br>c/o The Corporation Trust Company, )<br>Statutory Agent )<br>1209 Orange Street )<br>Wilmington, Delaware 19801 )<br>  )<br>    **Defendants.** ) | CASE NO.<br><br>JUDGE<br><br>**VERIFIED COMPLAINT** |

For its Complaint against Defendants James Chiacchia ("Chiacchia") and Covac Global, Holdings, Inc. ("Covac"), Plaintiff FocusPoint International, Inc. ("FocusPoint") avers and states as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1. FocusPoint is an Ohio corporation with its principal place of business located at 15830 Foltz Parkway, Strongsville, Ohio 44149.

2. Upon information and belief, Chiacchia is an individual residing at 31448 Kingsway Road, Georgetown, Texas 78628.

3. Upon information and belief, Covac is a Delaware corporation with its principal place of business located in Florida.

4. This Court has subject matter jurisdiction over this claim, pursuant to 28 U.S.C. § 1332, as this is a civil action involving damages in excess of $75,000, exclusive of costs and interest, between parties who are diverse in citizenship.

5. This Court has personal jurisdiction over Chiacchia because Clause 23 of the Employment Agreement between Chiacchia and FocusPoint at issue (the "Agreement," a copy of which is attached as Exhibit A) provides that "the parties attorn to the jurisdiction is (*sic*) of the State of Ohio," and Chiacchia thereby expressly consented to jurisdiction in Ohio.

6. This Court has jurisdiction over Covac because, upon information and belief, it transacts substantial business in Ohio and, as set forth below, it intentionally interfered with the business operations and trade secrets of FocusPoint, an Ohio company. By its actions, Covac caused – and continues to cause – FocusPoint injury in Ohio.

7. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

8. FocusPoint is a global assistance company that provides a suite of health, security, and incident response services, including, but not limited to, providing emergency and security evacuation services to its clients worldwide, including through its Care and Assistance Plus (CAP) plan.

9. FocusPoint provides its clients with travel mitigation services in the areas of health, safety, and security, providing immediate responses, up to and including evacuation for foreign travelers. For example, if a FocusPoint client experiences a medical emergency in a foreign country, FocusPoint can arrange for the client to be retrieved and flown to a U.S. hospital.

13292238.1

10. These services became particularly useful for FocusPoint's clients during the COVID-19 pandemic. As part of its suite of service offerings, FocusPoint can arrange for its clients traveling abroad to travel safely back to the U.S. without fear of being stuck in a mandatory quarantine or receiving medical care not up to U.S. standards.

11. The FAQ section on the FocusPoint website describing the CAP program states:

> **If I test positive for COVID-19 while abroad, does CAP cover the cost of my extended stay? What if my traveling companions test positive and they don't have CAP?**
>
> If there's a pandemic outbreak, such as COVID-19, CAP protection plans include hospital-to-hospital transfers (to get CAP customers home) as well as 14 days of quarantine expenses.
>
> If a CAP customer has a traveling companion that doesn't have a CAP protection plan and tests positive for COVID, we'll be pleased to help on a fee-for-service basis.

(*See* https://www.captravelassistance.com/resources/travel-protection-plan-frequently-asked-questions.)

12. FocusPoint has developed and acquired substantial confidential information and trade secrets in its business, including but not limited to customer lists, methods of pricing, price lists, special requirements of customers, vendor information, methods of servicing customers, marketing, sales and business strategies, competitor and market intelligence, capital investments, technical innovations, discoveries, system designs, technical enhancements, and other information of a similar nature (collectively referred to as FocusPoint's "Confidential Information").

13. Additionally, given the unique nature of FocusPoint's travel mitigation services, the universe of potential clients is not generally known to the public, and FocusPoint invests significant time and money annually in developing its prospect lists. These lists are included in the definition of FocusPoint's Confidential Information.

13292238.1

14. FocusPoint employed Chiacchia as the Vice President of Sales from September 21, 2020 through November 24, 2021.

15. Chiacchia was provided total compensation well into the six figures, and he reported directly to FocusPoint's CEO. Only two other employees reported directly to the CEO.

16. As a result of his high-level position with the company, Chiacchia actively worked with FocusPoint's Confidential Information.

17. Specifically, and without limitation, Chiacchia had full access to, and contact with, FocusPoint's clients and potential clients, and maintained relationships with many of them.

18. Chiacchia also worked in close cooperation with FocusPoint's CEO to develop, refine, manage, and execute the company's global sales plans and strategies.

19. FocusPoint takes active measures to safeguard its valuable Confidential Information, including requiring all employees to sign covenants agreeing to safeguard the Confidential Information both during and after their employment and certain post-employment restrictive covenants.

20. As a condition of his employment, and in exchange for continued employment, Chiacchia was required to sign the Agreement. (*See* Ex. A.) The Agreement includes restrictive covenants of non-disclosure, non-solicitation, and non-competition.

21. In the Agreement, Chiacchia agreed to, among other things, only use Confidential Information in connection with the performance of his work with FocusPoint "and not for any other purpose, including without limitation, [his] personal gain." (Ex. A, § 15.) Chiacchia also agreed not to disclose Confidential Information to any person outside of FocusPoint, and to return all copies of Confidential Information at the end of his employment. (*Id.*)

22. Additionally, the Agreement prohibits Chiacchia, for a period of twelve (12) months following the termination of his employment with FocusPoint, from, among other things: (1) working for a competitor in a capacity which relates to the Business; (2) soliciting FocusPoint's clients or prospective clients; and (3) accepting or conducting business from or with any Client or Potential Client, on behalf of any entity engaged in the Business in the Territory. (Ex. A, §§ 16-17.)

23. A "Competitor" is defined in the Agreement as any company that provides the services defined as "Business," which includes, among other things: security and medical travel assist services, medical staffing, security audits, and security personnel, along with "any other business conducted by [FocusPoint] in which [Chiacchia was] materially involved prior to the termination of [his] employment." (Ex. A, § 16.)

24. In the Agreement, Chiacchia expressly acknowledged the reasonableness of the post-employment restrictive covenants for safeguarding FocusPoint's confidential business information, and he acknowledged that a violation of these restrictions would cause irreparable harm to FocusPoint. (Ex. A, § 18.)

25. On October 28, 2021, Chiacchia gave notice that he was resigning from FocusPoint. At the time of his resignation, he indicated to FocusPoint's CEO that he was "semi-retiring" to spend more time with family. As a result of this representation, FocusPoint allowed Chiacchia to stay with the company for over one month after he gave notice.

26. But despite those representations and his obligations under the Agreement, FocusPoint recently learned that Chiacchia has accepted employment with Covac, a direct competitor of FocusPoint's on several lines of business, including travel mitigation services.

27. According to its website, Covac was founded in 2020 with an initial focus on coronavirus pandemic extractions from foreign countries. Covac now also provides clients with medical emergency and security crisis evacuation services. Covac describes itself as "[t]he pioneer pandemic evacuation and repatriation membership program. Covac Global provides fully indemnified evacuation and repatriation membership for Covid-19, medical emergencies and security crises." (*See* www.covacglobal.com/faqs/.)

28. Thus, Covac is a direct competitor of FocusPoint's. The fact that Covac is a direct competitor to FocusPoint was well-known to Chiacchia. Chiacchia and Covac's CEO previously worked together at a different company, and early in his tenure with FocusPoint, Chiacchia suggested to FocusPoint's CEO, Greg Pearson, that they consider doing business with Covac. Pearson responded that he had prior contact with Covac as well, but that FocusPoint could offer directly the same services sold by Covac: "I'm not opposed to looking at it further, but we may not have too (*sic*). If they secure the indemnity from a Lloyds Syndicate, why don't we go do the same." (*See* emails attached as Exhibit B.) Chiacchia, agreeing that FocusPoint could offer the same services, replied, "Yup! No reason we can't do the exact same thing, for sure." (*Id.*)

29. The two companies have even been referenced in the same Forbes article explaining the benefits of travel mitigation services.[1]

30. According to Covac's website, Chiacchia was hired by Covac as the Vice President of Strategic Development, which appears to be virtually the same job as his former position as Vice President of Sales for FocusPoint. (*See* www.covacglobal.com/our-team/.)

31. Essentially, Covac is a startup company that hired one of the top business development representatives from a competitor in order to get its business off the ground.

---

[1] *See* "Have A Safe Trip: These Tips And Strategies Actually Work," accessible at https://www.forbes.com/sites/christopherelliott/2021/03/27/have-a-safe-trip-these-tips-and-strategies-actually-work.

6

13292238.1

Additionally, FocusPoint has recently learned that, upon information and belief, Chiacchia stole valuable Confidential Information on the very day he gave notice that he was leaving.

32. Attached as Exhibit C is an email from Mohamed Abouelfetouh, FocusPoint's Director of Strategic Development, to Chiacchia, dated October 28, 2021, the same day that Chiacchia gave notice. Attached to this email are two spreadsheets: **one containing all of FocusPoint's active accounts and another containing all of FocusPoint's current prospects** (collectively, the "Customer Lists"). For obvious reasons, the Customer Lists themselves are not attached to the Complaint but can be shown to the Court *in camera* and/or subject to a future protective order with attorneys' eyes-only designation.

33. These lists were requested by Chiacchia, as Abouelfetouh begins the email with "Like promised…"

34. Therefore, on the day he gave notice, Chiacchia requested and received a list of all of FocusPoint's clients, prospects, and even vendors. These spreadsheets not only contain the names of companies, but also contact information, services offered, status of the account, notes developed over time, and other information which is highly valuable to FocusPoint and would also be to a competitor, particularly a startup. Upon information and belief, Defendants are using this Confidential Information to directly compete with FocusPoint.

35. On January 19, 2022, through counsel, Plaintiff sent a letter to Defendants, providing notice of Chiacchia's ongoing duties and obligations under the Agreement, enclosing the Agreement, and demanding that Defendants cease and desist Chiacchia's unlawful employment with Covac. (A true and accurate copy of the letter sent on January 19, 2022 is attached as Exhibit D.) At the time FocusPoint sent the letter, it had not yet discovered Chiacchia's misappropriation of the Customer Lists.

36. On January 29, 2022, counsel for Covac responded to the cease and desist letter. (A true and accurate copy of the letter is attached as Exhibit E.) In its response, Covac did not dispute the existence of the Agreement, but instead made arguments as to its enforceability. Covac also claimed in the letter that FocusPoint does not provide "services specifically tailed to address COVID-19 pandemic related travel," which is not true.

### COUNT ONE – BREACH OF CONTRACT AGAINST DEFENDANT CHIACCIA

37. FocusPoint incorporates the above paragraphs as if fully rewritten herein.

38. The Agreement constitutes a binding and enforceable contract between FocusPoint and Chiacchia. The restrictive covenants contained therein are reasonable and necessary to protect FocusPoint's legitimate business interests.

39. FocusPoint performed all its obligations under the Agreement.

40. Chiacchia has breached, and continues to breach, the restrictive covenants in the Agreement by, at a minimum, working for a Competitor (as defined in the Agreement) within the 12-month period following his employment with FocusPoint.

41. Chiacchia has also breached the Agreement by stealing FocusPoint's Confidential Information, including the Customer Lists.

42. As a direct and proximate result of Chiacchia's violation of the terms of the Agreement, FocusPoint has suffered and will continue to suffer substantial and irreparable injury, in the form of a loss of customer relations and confidential information. The value of FocusPoint's Confidential Information which could be lost as a result of Chiacchia's breach of the Agreement well exceeds $75,000.

43. FocusPoint has no adequate remedy at law and is entitled to immediate injunctive relief, together with damages caused by Chiacchia's breach, which will be further determined at trial.

## COUNT TWO – MISAPPROPRIATION OF TRADE SECRETS AGAINST CHIACCIA AND COVAC

44. FocusPoint incorporates the above paragraphs as if fully rewritten herein.

45. FocusPoint has developed and acquired substantial Confidential Information, including but not limited to the Customer Lists, methods of pricing, price lists, special requirements of customers, methods of servicing customers, marketing, sales and business strategies, competitor and market intelligence, and any other information of a similar nature.

46. FocusPoint's Confidential Information constitutes trade secrets pursuant to R.C. 1333.61, as it is business information that derives independent economic value for FocusPoint by not being generally known or ready ascertainable by proper means by others who could obtain economic value from its disclosure or use.

47. FocusPoint takes efforts to maintain the secrecy of this information, including requiring its employees who are permitted access to FocusPoint's Confidential Information (including Chiacchia) to sign the Agreement legally obligating them to maintain its secrecy and prohibiting certain employees (including Chiacchia) from working for a competitor for a reasonable period of time in order to guard against the inevitable disclosure of those secrets.

48. Chiacchia contractually had and continues to have a duty to maintain the secrecy of FocusPoint's Confidential Information.

49. Upon information and belief, Chiacchia has misappropriated FocusPoint's Confidential Information and provided it to Covac, a direct competitor. Chiacchia did so by,

among other things, requesting and obtaining the Customer Lists on the same exact day he gave notice that he was resigning, for which he offered a surreptitious reason.

50. Upon information and belief, Covac knew of the Agreement and Chiacchia's obligation not to disclose FocusPoint's Confidential Information. Even if Covac did not know of the Agreement, the nature of the Customer Lists as confidential information is obvious.

51. Nonetheless, Covac actively participated in and encouraged Chiacchia's misappropriation of FocusPoint's Confidential Information by hiring Chiacchia and using the Customer Lists to directly compete with FocusPoint.

52. Defendants' misappropriation of FocusPoint's Confidential Information is willful and malicious.

53. Unless Defendants are enjoined from further misappropriation of FocusPoint's Confidential Information, FocusPoint will be irreparably harmed, and money damages alone are an inadequate remedy to redress such a continuing injury. FocusPoint has no adequate remedy at law and is entitled to injunctive relief.

54. FocusPoint is also entitled to recover its attorneys' fees and punitive damages for Defendants' willful and malicious misappropriation of FocusPoint's trade secrets.

## COUNT THREE – UNFAIR COMPETITION

55. FocusPoint incorporates the above paragraphs as if fully rewritten herein.

56. Covac's misappropriation of FocusPoint's Confidential Information and the employment of an employee with a clear and enforceable noncompete restriction constitutes unfair competition under the laws of the State of Ohio.

57. Covac's foregoing actions and conduct have been intentional, malicious, and willful.

58. As an actual, direct, and proximate result of Covac's unfair competition, Covac has benefited and will continue to benefit at the expense of FocusPoint.

59. As an actual, direct, and proximate result of Covac's unfair competition, FocusPoint has been harmed by the loss of substantial proprietary business information, as well as a loss of clients, revenue, income and good will, among other injuries.

60. Upon information and belief, Covac will continue its acts of unfair competition, and FocusPoint will be irreparably harmed thereby, unless Covac's acts are enjoined by this Court.

61. FocusPoint is also entitled to recover its attorneys' fees and punitive damages for Covac's willful and malicious misconduct.

## COUNT FOUR – TORTIOUS INTERFERENCE WITH CONTRACT

62. FocusPoint incorporates the above paragraphs as if fully rewritten herein.

63. The Agreement is an enforceable contract between FocusPoint and Chiacchia.

64. Upon information and belief Covac induced Chiacchia to breach the Agreement as set forth above.

65. Chiacchia did, in fact, breach the Agreement.

66. As a direct result of Defendants' intentional and tortious interference with FocusPoint's existing contractual relations, FocusPoint has suffered, and unless Defendants are restrained, will continue to suffer immediate and irreparable injury, including but not limited to a loss of clients, revenue, income, and good will.

67. Upon information and belief, the conduct of Defendants was and continues to be intentional, willful, malicious, outrageous, and in bad faith.

68. FocusPoint has no adequate remedy at law and will suffer substantial, immediate, and irreparable harm unless Defendants' are enjoined.

69. Greater injury will be inflicted upon FocusPoint by the denial of this relief than any harm on Defendants by granting such relief.

70. FocusPoint is entitled to immediate injunctive relief, together with damages caused by Defendants' breach, which will be further determined at trial in excess of $75,000 as well as an award for punitive damages and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FocusPoint prays for judgment in its favor as follows:

1. For immediate and permanent injunctive relief as follows:

    a. That Chiacchia be ordered to comply with the terms of the Employment Agreement, including ceasing his employment at Covac and being prohibited from competition in violation of the Agreement;

    b. That Defendants be enjoined from further misappropriation, use and/or disclosure of any of FocusPoint's Confidential Information;

    c. That Defendants be ordered to preserve all electronic information regarding this dispute, including the Customer Lists;

    d. That Defendants be ordered not to use, access, forward, or otherwise interface with the Customer Lists;

    e. That Defendants be ordered not to solicit, contact, or communicate with any clients or prospective clients of FocusPoint;

2. Compensatory damages against Defendants in an amount to be determined at trial and in excess of $75,000, plus pre-judgment and post-judgment interest;

3. Punitive damages, and attorneys' fees; and

4. Any and all other relief, both legal and equitable, to which FocusPoint may be entitled and this Court finds just and proper.

13292238.1

Respectfully submitted,

/s/ Michael Pascoe
Michael Pascoe (0080899)
Phil Eckenrode (0084187)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:   216.274.2397
Facsimile:    216.274.2597
E-mail: mpascoe@hahnlaw.com
　　　　　peckenrode@hahnlaw.com

*Attorneys for Plaintiff FocusPoint International, Inc.*

**Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

**Executed on February 1, 2022.**

_____
Greg Pearson, FocusPoint CEO

13292238.1